**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**TIMOTHY M. BETLEWICZ,**

            **Plaintiff,**                        **1:12-cv-1158
                                                     (GLS/RFT)**

         v.

**THE DIVISION OF NEW YORK
STATE POLICE et al.,**

            **Defendants.**
_____

**APPEARANCES:**                           **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Martin W. Schwartz          MARTIN W. SCHWARTZ, ESQ.
119 Rockland Center, Suite 134
Nanuet, NY 10954

**FOR THE DEFENDANTS:**
HON. ERIC T. SCHNEIDERMAN     WILLIAM J. MCCARTHY, JR.
New York State Attorney General      C. HARRIS DAGUE
The Capitol                                      Assistant Attorneys General
Albany, NY 12224

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiff Timothy M. Betlewicz commenced this action against the

Division of New York State Police ("State Police"), former Acting

Superintendent John P. Melville, and Superintendent Joseph D'Amico (collectively, "State defendants"), alleging violations of the Equal Protection and Due Process Clauses, as well as the Equal Pay Act.[1]  (*See* Compl., Dkt. No. 1.)  After the case, which was originally filed in the Southern District of New York, was transferred to this court, State defendants brought the presently-pending motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  (*See* Compl.; Dkt. Nos. 17, 18, 28.)  For the reasons that follow, the motion is granted in part and denied in part.

## II.  Background

### A.  Facts[2]

On January 10, 2010, while on patrol as a New York State Police trooper, Betlewicz was struck by an unidentified object and knocked unconscious.  (*See* Compl. ¶¶ 8, 15-16.)  Betlewicz suffered critical injuries and subsequently underwent "major cervical decompression surgery."  (*Id*. ¶¶ 8, 16-17.)  Four days after the January 10 incident, Betlewicz was suspended from his position with the State Police without pay after a hair

---

[1] *See* 29 U.S.C. § 206(d).

[2] The facts are drawn from Betlewicz's Complaint and presented in the light most favorable to him. (*See* Compl.)

sample provided by him allegedly tested positive for "[c]*annabis sativa*." (*Id*. ¶¶ 9, 18.)  On May 6, 2010, following a four-month unpaid suspension, Betlewicz's employment with the State Police was terminated.  (*See id*. ¶ 19.)

At some point after Betlewicz's unpaid suspension began, but prior to his termination, the State Police Internal Affairs Bureau commenced an investigation seeking to prove that, fearing an impending positive drug test, Betlewicz fabricated the January 10, 2010 incident.  (*See id*. ¶¶ 20, 22.)  On April 8, 2010, however, a New York State Worker's Compensation Board Administrative Law Judge found that Betlewicz's injuries resulted from a "genuine line of duty accident[,] and made awards."  (*Id*. ¶ 21.)  That decision was subsequently affirmed on October 4, 2010 by an appeals panel.  (*See id*. ¶ 22.)

Despite the determinations of the ALJ and appeals panel, the State Police continued to refuse Betlewicz pay and benefits until, on August 9, 2011, the New York State Comptroller granted Betlewicz an "Accidental Disability Retirement Pension."  (*See id*. ¶¶ 23, 26.)  On August 26, 2011, Betlewicz's employment status was changed by the State Police from "[d]ismissed," to "[d]isability [r]etirement."  (*Id*. ¶ 11.)

### III. Standard of Review

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 234 (2d Cir. 2012) (internal quotation marks and citation omitted). For a full discussion of that standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV. Discussion

**A.   Personal Involvement**

State defendants contend first that Betlewicz's equal protection and due process claims against Melville and D'Amico must be dismissed for lack of personal involvement. (*See* Dkt. No. 28, Attach. 1 at 4-6.) Betlewicz counters, and the court agrees, that he has alleged sufficient personal involvement on behalf of Melville and D'Amico to defeat judgment on the pleadings. (*See* Dkt. No. 35 at 2-3.)

Damages in a section 1983 claim are only appropriate if the defendant was personally involved in the alleged constitutional violation. *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). Ordinarily, the

4

plaintiff must demonstrate that there is a "tangible connection between the alleged unlawful conduct and the defendant." *Balkum v. Sawyer*, No. 6:06-cv-1467, 2011 WL 5041206, at *4 (N.D.N.Y. Oct. 21, 2011) (citing *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)). Where, as here, defendants are supervisory officials, a link, under the doctrine of respondeat superior, is inadequate to establish the requisite personal involvement. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). Thus, to prevail against a supervisory defendant, the plaintiff must show that the supervisor:

> (1) directly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated.

*Iqbal v. Hasty*, 490 F.3d 143, 152 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Betlewicz alleges that, after learning of the results of the drug test, he attempted to explain the positive result, but that Melville, who was the Acting Superintendent of the New York State Police between January 2010

5

and January 2011, "summarily rejected" his explanation, and subsequently took action which resulted in Betlewicz's termination. (Compl. ¶ 18; *see id*. ¶¶ 9, 13.) He also alleges that both Melville and D'Amico, who succeeded Melville and remains the current Superintendent, "consistently, repeatedly and beyond their authority . . . intentionally, maliciously and wrongfully failed to take the necessary steps within their powers to provide [him] any measure of due process[] by summarily ignoring all his" written demands for benefits. (Compl. ¶¶ 13, 14, 35.) Betlewicz contends further that, by ignoring multiple written requests, and "fail[ing] to take the necessary steps within their powers to provide" him the benefits to which he insists he is entitled, and which were purportedly granted to a similarly situated female trooper, Melville and D'Amico personally violated his equal protection rights. (*Id.* ¶ 38.)

In light of these allegations, Betlewicz has adduced sufficient facts, at this stage of the litigation, to satisfy the personal involvement requirement.

## B. Eleventh Amendment Immunity

State defendants contend next that Betlewicz's constitutional claims against the State Police, and Melville and D'Amico in their official capacities, are barred by the Eleventh Amendment. (*See* Dkt. No. 28,

6

Attach. 1 at 6-7.)  Betlewicz concedes that the Eleventh Amendment bars his claims for damages against the State Police and the individual defendants in their official capacities, but contends that his claims are viable to the extent that they seek prospective declaratory and injunctive relief.³  (*See* Dkt. No. 35 at 3-5.)  While Betlewicz's legal premise is correct, his constitutional claims against the State Police, and Melville and D'Amico in their official capacities, are nevertheless barred completely by the Eleventh Amendment because none of the injunctive or declaratory relief which he seeks is truly prospective in nature.

"[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State," or against "state agents and state instrumentalities that are, effectively arms of the state." *Monreal v. New York*, No. 12-2829, 2013 WL 1789266, at *1 (2d Cir. Apr. 29, 2013) (internal quotation marks and citations omitted).  "[A] plaintiff may avoid

---

³ Although Betlewicz also argues that the Eleventh Amendment does not bar his claim under the Equal Pay Act, (*see* Dkt. No. 35 at 4-5), State defendants' sovereign immunity argument was limited to Betlewicz's Equal Protection and Due Process Clause claims, (*see* Dkt. No. 28, Attach. 1 at 6-7).  In any event, Betlewicz is correct that his Equal Pay Act claim is not barred by the Eleventh Amendment.  *See Anderson v. State Univ. of N.Y.*, 107 F. Supp. 2d 158, 160-66 (N.D.N.Y. 2000) (holding that the Equal Pay Act "validly abrogated" the "states' Eleventh Amendment immunity").

7

the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint[:] (a) alleges an ongoing violation of federal law[;] and (b) seeks relief properly characterized as prospective." *Clark v. DiNapoli*, No. 12-464-cv, 2013 WL 363000, at *1 (2d Cir. Jan. 31, 2013) (internal quotation marks and citation omitted).  Excluded from this exception, however, are suits "by private parties seeking to impose a liability which must be paid from public funds in the state treasury," including "retroactive payments wrongfully withheld," such as "front pay, back pay, and reimbursement for lost benefits." *McLaughlin v. Pezzolla*, No. 06-CV-0376, 2010 WL 56051, at *4 (N.D.N.Y. Jan. 4, 2010) (internal quotation marks and citations omitted).  Similarly, declaratory relief is barred by the Eleventh Amendment "when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective." *Kent v. New York*, No. 1:11-CV-1533, 2012 WL 6024998, at *7 (N.D.N.Y. Dec. 4, 2012) (internal quotation marks and citation omitted).

In his prayer for relief, Betlewicz seeks a declaratory judgment that State defendants violated his equal protection and due process rights, as

8

well as an award of "back pay, front pay, and accrued benefits." (Compl. ¶ 39(d).) Though equitable in nature, these requests are plainly barred by the Eleventh Amendment. *See Kent*, 2012 WL 6024998, at *7; *McLaughlin*, 2010 WL 56051, at *4. Betlewicz also seeks injunctive relief against State defendants "requiring them to permanently terminate, and cease and desist from continuing their criminal, internal or other investigations of [him] with regard to the line of duty accident on January 10, 2010," and requiring them to turn over a slew of documents and records, as well as "a list of the names, ranks and addresses, home and business, of every employee of the [d]efendant New York State Police, who is or was involved in these investigations." (Compl. ¶ 39(c).) While this request is undoubtedly prospective, it is wholly unrelated to the constitutional injuries for which Betlewicz seeks redress. (*See, e.g.*, Compl. ¶¶ 34-38.)

Accordingly, because Betlewicz does not seek applicable prospective injunctive relief, his equal protection and due process claims are barred by the Eleventh Amendment and dismissed except as against Melville and D'Amico in their individual capacities.

**C.     Equal Protection and Equal Pay Act**

9

Betlewicz alleges that, in being denied wage and fringe benefits while on disability leave, he was discriminated against based on gender, in violation of both the Equal Protection Clause and the Equal Pay Act. (*See* Compl. ¶¶ 29-33, 36-38.) State defendants argue that Betlewicz has failed to plausibly state either claim. (*See* Dkt. No. 28, Attach. 1 at 7-10.) While the court agrees with State defendants that Betlewicz's equal protection claim requires dismissal, it disagrees as to his Equal Pay Act claim, which survives.

### 1. Equal Protection

Claims alleging gender discrimination in violation of the Equal Protection Clause are subject to the familiar *McDonnell Douglas*[4] burden-shifting framework. *See Doe v. City of N.Y.*, 473 F. App'x 24, 27 (2d Cir. 2012). To establish a prima facie gender discrimination claim within that framework, a plaintiff must establish that: "(1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his" gender. *Dawson v.*

---

[4] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005); *see Doe*, 473 F. App'x at 27.  Where, as here, the plaintiff attempts to compare himself "to others who allegedly received different treatment," the comparator "must be similarly situated [to the plaintiff] in all material respects."  *Doe*, 473 F. App'x at 27 (internal quotation marks and citation omitted).

  Even assuming that Betlewicz has satisfied the first three prongs, his Complaint is devoid of factual allegations which give rise to the inference that he was denied leave salary and benefits because of his gender.  In attempting to show gender discrimination, Betlewicz points to the fact that "at least one female trooper performing the same patrol and related duties as [him] and now disability-retired . . . [was] granted the full pay provided for by Regulation 5.12," that other "similarly situated female troopers . . . were also granted Regulation 5.12 disability pay," and that "no female troopers injured in the line of duty were refused such disability pay."  (Compl. ¶ 24.)  He admits, however, that, "[u]pon information and belief[,] such disability pay is routinely granted to *all* sworn members of the state police."  (*Id*. (emphasis added).)  Betlewicz does not allege that any of the comparators against whom he gages his treatment were, like him, suspended or terminated at the time that they received the benefits in

11

question.  (*See id*.)  As such, no comparators were similarly situated to him in all material respects.  *See e.g., Doe*, 473 F. App'x at 27.  Because Betlewicz provides no additional facts from which an inference of discrimination can be drawn, State defendants' motion is granted as to Betlewicz's equal protection claim, and that claim is dismissed.

2. *Equal Pay Act*

The Equal Pay Act "prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for 'equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'"  *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999) (quoting 29 U.S.C. § 206(d)(1)).  For purposes of the Equal Pay Act, the term "wages" encompasses "[f]ringe benefits, such as medical, hospital, accident, life insurance, and retirement benefits, bonus plans and leave."  *Equal Emp't Opportunity Comm'n v. Bell Atl. Corp.*, Nos. 96 Civ. 6723(DC), 98 Civ. 3427(DC), 1999 WL 386725, at *7 (S.D.N.Y. June 11, 1999) (citing 29 C.F.R. § 1620.11).

Unlike the Equal Protection Clause, the Equal Pay Act does not require a showing of discriminatory intent, but instead provides for a type of

12

strict liability. *Belfi*, 191 F.3d at 136. To state a prima facie Equal Pay Act claim, a plaintiff must establish that: "[(1)] the employer pays different wages to employees of the opposite sex; [(2)] the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and [(3)] the jobs are performed under similar working conditions." *Id*. at 135 (internal quotation marks and citation omitted). Once a plaintiff makes a prima facie showing, "the burden of persuasion shifts to the defendant to show that the wage disparity is justified by one of [four] affirmative defenses provided under the Act," such as "a differential based on any other factor other than sex." *Id*. at 136 (internal quotation marks and citations omitted). "[T]o successfully establish the 'factor other than sex' defense, an employer must also demonstrate that it had a legitimate business reason for implementing the gender-neutral factor that brought about the wage differential." *Id*. If the employer offers such proof, the plaintiff "may counter the employer's affirmative defense by producing evidence that the reasons the defendant seeks to advance are actually a pretext for sex discrimination." *Id*.

State defendants argue that, because the female troopers to whom Betlewicz compares himself did not test positive for drug use, he has failed

13

to show that he was compensated less for equal work performed under similar working conditions. (*See* Dkt. No. 28, Attach. 1 at 7-8.) Although styled as an attack on Betlewicz's prima facie showing, this argument is more properly characterized as an attempt to establish the affirmative defense that the disparity in benefits was justified by "a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1)(iv). In alleging that he was denied salary and benefits which were provided to at least one female trooper "performing the same patrol and related duties" as him, Betlewicz has pled facts sufficient to meet the prima facie threshold. (Compl. ¶ 24.)

While State defendants may be able to establish that the disparity about which Betlewicz complains resulted from a legitimate, non-gender-based business reason, consideration of this argument is, in light of the limited record before the court, premature at this juncture. *See, e.g.*, *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). Accordingly, State defendants' motion is denied as to Betlewicz's Equal Pay Act claim.

**D.    Procedural Due Process**

Next, State defendants contend summarily, and without citation, that

Betlewicz's due process claim must be dismissed because he has failed to establish a cognizable property interest or that he was deprived by the them of such an interest without adequate due process. (*See* Dkt. No. 28, Attach. 1 at 11.) Betlewicz argues that he has pled facts sufficient to state a plausible due process claim. (*See* Dkt. No. 35 at 18-21.) The court agrees with Betlewicz.

In order to state a claim for deprivation of property without due process of law, a plaintiff must: (1) identify a property right; (2) show a deprivation of that right by the state; and (3) "show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of the Town of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (internal quotation marks and citation omitted). Property interests are not created by the Constitution, but instead "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

Betlewicz alleges that he held a "protected property interest in the

15

monies, benefits, perks and emoluments arising from his employment, as such property rights are created by the N.Y.S. Executive Law and the rules and regulations of the Defendant New York State Police," specifically Regulation 5.12.  (Compl. ¶¶ 24, 35.)  Deprivation of this interest occurred, Betlewicz contends, when he was suspended without pay, and subsequently terminated, for failing a drug test, and when he was denied leave pay and benefits despite an administrative determination, and affirmance, that his injury occurred in a genuine line-of-duty accident.  (*See id*. ¶¶ 18-23, 35.)  Betlewicz alleges that, despite his multiple written demands for such benefits, State defendants "have failed to afford [him] any such due process in adjudication of his claims," and have "summarily ignor[ed] all his claims." (Compl. ¶ 35.)  At this juncture, Betlewicz has adduced facts sufficient to state a plausible procedural Due Process claim.[5]

E. <u>Qualified Immunity</u>

Finally, State defendants argue that Melville and D'Amico are entitled

---

[5] Although the court acknowledges that it *may*, upon a Rule 12 motion, resolve the legal question of whether the plaintiff in fact enjoys the property interest alleged, it declines to do so at this time.  *See, e.g., Pappas v. Town of Enfield*, No. 3:08-cv-250, 2010 WL 466009, at *4 (D. Conn. Feb. 3, 2010).

to qualified immunity. (*See* Dkt. No. 28, Attach. 1 at 11-14.) Based on the limited record before it, however, the court cannot now conclude that Melville and D'Amico are entitled to such immunity. *See Alfaro v. Labador*, 300 F. App'x 85, 87 (2d Cir. 2008); *see also Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191-92 (2d Cir. 2006) ("[A] qualified immunity defense can be presented in a Rule 12[] motion, but . . . the defense faces a formidable hurdle when advanced on such a motion and is usually not successful." (internal quotation marks and citation omitted)).

## V. Conclusion

In sum, Betlewicz's equal protection claim is dismissed in its entirety, while his Equal Pay Act claim survives, as does his due process claim to the extent that it is brought against Melville and D'Amico in their individual capacities.[6]

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that State defendants' motion for judgment on the pleadings (Dkt. No. 28) is **GRANTED in part** and **DENIED in part** as

---

[6] State defendants' request for a protective order barring discovery pending the resolution of the instant motion is denied as moot. (*See* Dkt. No. 28, Attach. 1 at 14.)

follows:

> **GRANTED** as to Betlewicz's equal protection claim, and as to his due process claim to the extent that it is brought against the State Police and Melville and D'Amico in their official capacities; and
>
> **DENIED** as to Betlewicz's Equal Pay Act claim, and his due process claim to the extent that it is brought against Melville and D'Amico in their individual capacities; and it is further

**ORDERED** that the parties notify Magistrate Judge Treece in order to schedule further proceedings in accordance with this order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

May 20, 2013
Albany, New York

*[Signature]*
Gary L. Sharpe
Chief Judge
U.S. District Court