**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TIMOTHY M. BETLEWICZ,**

**Plaintiff,**          **1:12-cv-1158**
**(GLS/RFT)**

**v.**

**DIVISION OF NEW YORK STATE**
**POLICE et al.,**

**Defendants.**

_____

| **APPEARANCES:** | **OF COUNSEL:** |
| --- | --- |

**FOR THE PLAINTIFF:**
Office of Martin W. Schwartz          MARTIN W. SCHWARTZ, ESQ.
119 Rockland Center - Suite 134
Nanuet, NY 10954

**FOR THE DEFENDANTS:**
HON. ERIC T. SCHNEIDERMAN          C. HARRIS DAGUE
New York Attorney General          TIFFINAY M. RUTNIK
The Capitol          Assistant Attorneys General
Albany, NY 12224

**Gary L. Sharpe**
**Chief Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. Introduction**

Plaintiff Timothy M. Betlewicz commenced this action against

defendants the Division of New York State Police, former acting

superintendent John P. Melville, and superintendent Joseph D'Amico, alleging claims under the Equal Pay Act,[1] and 42 U.S.C. § 1983 for violations of the Equal Protection Clause and Due Process Clauses of the Fifth and Fourteenth Amendments.  (Compl. ¶¶ 29-38, Dkt. No. 1.)  Following a motion by defendants under Fed. R. Civ. P. 12(c), (Dkt. No. 28), the court dismissed Betlewicz's equal protection claim, and circumscribed the relief that could be obtained on his Equal Pay Act and due process claims, (Dkt. No. 37).  Pending are Betlewicz's motion for summary judgment on his remaining claims, (Dkt. No. 44), and defendants' cross motion for summary judgment, seeking dismissal of the complaint in its entirety, (Dkt. No. 47).  For the reasons that follow, Betlewicz's motion is denied, and defendants' cross motion is granted.

## II. Background

### A.    Facts[2]

On December 16, 2009, Betlewicz was employed by the State Police as a trooper.  (Defs.' Statement of Material Facts (SMF) ¶ 1, Dkt. No. 47,

_____

[1] *See* 29 U.S.C. § 206(d).

[2] Unless otherwise noted, the facts are undisputed.

Attach. 1.)[3]  Pursuant to its written procedures, the State Police randomly selected members of the force to provide urine samples for drug screening. (*Id.* ¶ 3.)  Betlewicz, who was among those randomly selected for testing on December 16, 2009, provided a urine sample that was determined to be too diluted for testing, which required him to provide a second urine sample and two hair samples.  (*Id.* ¶¶ 4-6; Dkt. No. 47, Attach. 3 at 8; Dkt. No. 51, Attach. 1 ¶ 7.)  The second urine sample provided by Betlewicz, on January 8, 2010, was also too diluted to effectively test.  (Defs.' SMF ¶¶ 6; Dkt. No. 51, Attach. 1 ¶ 7.)  On January 14, one of the two hair specimens was analyzed and it tested positive for marijuana.  (Defs.' SMF ¶¶ 11-12.) "The presence of marijuana in [Betlewicz's] hair sample was at a level indicative of multiple and sustained usage - ten times the laboratory's administrative cut off level for such a determination."  (*Id.* ¶ 12.)

On January 14, Betlewicz was suspended without pay, and on February 1, he was served with disciplinary charges, which accused him of violating State Police rules and regulations prohibiting drug use.  (*Id.* ¶¶ 13-

---

[3] Notably, Betlewicz failed to respond to defendants' statement of material facts as required by the Local Rules of Practice.  *See* N.D.N.Y. L.R. 7.1(a)(3).  Where properly supported, the facts asserted by defendants in their statement of material facts are deemed admitted pursuant to Local Rule 7.1(a)(3).

14.)  Because the suspension exceeded thirty days, Betlewicz was restored to suspended with pay status on February 14.  (Dkt. No. 51, Attach. 1 ¶ 16); 9 N.Y.C.R.R. § 479.10(b).  At the insistence of Betlewicz's attorney, the second hair specimen was tested; it, like the first specimen, tested positive for marijuana.  (Defs.' SMF ¶¶ 16, 18.)  On February 24, the date his hearing was supposed to be held on the disciplinary charges, Betlewicz reverted back to suspended without pay because the matter was adjourned at the request of his counsel.  (Dkt. No. 51, Attach. 1 ¶¶ 15, 19.)  On March 7, Betlewicz resigned his position with the State Police, but the following day he rescinded his resignation.  (Defs.' SMF ¶ 19-20.)  Thereafter, Betlewicz participated in a hearing on the disciplinary charges, which concluded in findings sustaining the charges and recommending his termination.  (*Id.* ¶¶ 21-22; Dkt. No. 51, Attach. 1 at 137-41.)  Melville accepted those findings and the recommendation that Betlewicz be terminated on May 6, 2010, and Betlewicz was terminated on the same day.  (Defs.' SMF ¶¶ 22-23.)  Betlewicz did not challenge his termination, (Dkt. No. 51, Attach. 1 ¶ 29), and he received no pay, with the exception of the brief period in February mentioned above, (*id.* ¶¶ 15, 16, 19), from January 13 to May 6, (Pl.'s SMF ¶¶ 4, 8, Dkt. No. 44).

4

While the foregoing facts were unfolding, on January 10, Betlewicz claimed that he was injured on the job.  (Defs.' SMF ¶ 8.)  Although the parties now dispute whether Betlewicz was, in fact, injured on the job, a Workers' Compensation Law Judge (WCLJ) previously determined that Betlewicz "had been injured in a genuine line-of-duty accident."  (Pl.'s SMF ¶ 10.)  The WCLJ's finding was upheld on appeal to the Workers' Compensation Board (WCB).  (*Id.* ¶ 13); *see* NYS Div. of Police, No. G014 8175, 2010 WL 3841976 (N.Y. Workers' Comp. Bd. Oct. 4, 2010).  Despite the WCB's finding, the State Police have undertaken a criminal investigation to determine if Betlewicz "falsely claimed he was injured at work, knowing his employer was about to receive positive results from his drug test."  (Defs.' SMF ¶ 9.)  Defendants have also refused to grant Betlewicz wages he applied for pursuant to § 5.12 of the State Police Administrative Manual, even though certain female troopers, who performed the same kinds of duties as Betlewicz when they were injured while on duty, have received § 5.12 benefits, and "no female troopers so injured in the line of duty have been refused the same kind of pay that has been denied to [Betlewicz]."  (Pl.'s SMF ¶¶ 14, 15; Dkt. No. 51, Attach. 1 ¶ 31.)

Ultimately, on August 9, 2011, the New York State Comptroller granted Betlewicz an accidental disability retirement pension. (Pl.'s SMF ¶ 16.) Related to the Comptroller's award of an accidental disability retirement pension, a State Police human resources internal memorandum reflects a "payroll transaction" for Betlewicz of "Approved Disability Retirement - Previously 'Dismissed'" on August 26, 2011. (Dkt. No. 47, Attach. 4 at 5; Pl.'s SMF ¶ 16.) While Betlewicz claims that the payroll transaction reflects defendants' adoption of the Comptroller's determination *ab initio*, (Pl.'s SMF ¶ 17), it was "merely a ministerial record-keeping function to document the Comptroller's action," and Betlewicz's official status remains "terminated" for "disciplinary removal," (Dkt. No. 47, Attach. 4 ¶¶ 12, 14).

**B.    Procedural History**

Betlewicz commenced this action in January 2012. (*See generally* Compl.) Following joinder of issue, (Dkt. No. 26), defendants moved for judgment on the pleadings, (Dkt. No. 28). The motion was granted to the extent that Betlewicz's equal protection claim and due process claim as against the State Police and Melville and D'Amico in their official capacities were dismissed. (Dkt. No. 37 at 18.) The motion was denied in all other

6

respects, leaving for adjudication Betlewicz's claims under the Equal Pay Act and for a procedural due process violation as against Melville and D'Amico in their individual capacities. (*Id.*) Before a pretrial scheduling order was issued by the court, (Dkt. No. 43), the parties filed their competing summary judgment motions, (Dkt. Nos. 44, 47).

### III. <u>Standard of Review</u>

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y.2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir.2012).

### IV. <u>Discussion</u>

Betlewicz argues that he is entitled to summary judgment on his claims under the Equal Pay Act and for a due process violation under § 1983. (Dkt. No. 44, Attach. 2 at 4-17.) With respect to the Equal Pay Act claim, Betlewicz asserts that the only reasonable defense available to defendants—that a differential in pay between he and female employees was based upon any other factor than sex—is "'off the table' because . . . [d]efendants themselves have officially changed [Betlewicz]'s status from

7

'Dismissed' to 'Disability Retirement.'" (*Id.* at 5-9.)  He further argues that three reasons demonstrate that his "alleged illegal drug use and resulting punishment are not a valid 'factor other than sex'": (1) his claim for unpaid salary is supported by the WCB finding and the change in payroll status noted above; (2) for the six months preceding his termination, he was not adjudicated as having used drugs; and (3) his alleged drug use is "completely unrelated to the merits of [his] claim for, and right to receive, the pay that is due him because of his serious injuries and resulting inability to work for an extended period of time." (*Id.* at 8-9.)  Even if defendants are able to show that a differential in pay was based on a factor other than sex, Betlewicz contends that he can demonstrate pretext through the lacking credibility of defendants' contention that the difference was because of drug use.  (*Id.* at 9-13.)  Turning to his procedural due process claim, Betlewicz argues that defendants have deprived him of a property right, namely, "leave pay," without affording him any procedural protections.  (*Id.* at 13-17.)

In response, defendants argue that Betlewicz's motion should be

denied as premature. (Dkt. No. 47, Attach. 2 at 7-10.)[4] In particular,

defendants seek discovery by way of a deposition of Betlewicz to elicit

facts—which they contend are reasonably expected to create genuine

issues of material fact—pertaining to: his marijuana usage; whether he

fabricated the January 10 incident "to neutralize the effect of his impending

drug test failure"; and the basis of his belief that defendants have

abandoned their position that he is not entitled to a disability retirement.

(*Id.* at 8.) To this argument, Betlewicz asserts that discovery is not

necessary because: (1) defendants are disingenuous given their

assertions—in support of their cross motion—that the factual discrepancies

regarding his marijuana usage are "'of no moment'"; (2) defendants are

estopped from challenging the WCB's determination; and (3) any inquiry

about why he believes that defendants have changed their position would

not yield discoverable facts. (Dkt. No. 50 at 4-7.) Betlewicz also claims

that, by changing his status to "Disability Retirement," defendants have

---

[4] Defendants also rightly opposed Betlewicz's motion on the ground that it was not supported with "legally sufficient materials"; namely, the only evidence in support of Betlewicz's motion was an attorney declaration. (Dkt. No. 47, Attach. 2 at 5-6.) The parties agree that Betlewicz's later-filed declaration confirming the truth and accuracy of the attorney declaration has rectified the shortcomings of Betlewicz's original motion papers. (Dkt. No. 50, Attach. 1; Dkt. No. 52 at 3 n.1.)

admitted his entitlement to back pay and are foreclosed from now taking an inconsistent position.  (*Id.* at 7.)

In the event that the court finds that summary judgment is not premature, defendants argue that the undisputed facts nonetheless entitle them to judgment as a matter of law.  (Dkt. No. 47, Attach. 2 at 10-18.)  First, as to Betlewicz's Equal Pay Act claim, defendants contend that a factor other than sex, in particular Betlewicz's failed drug test, was the basis for denying him certain benefits that female employees of the State Police were awarded, and that he cannot establish that this justification is pretextual because his termination followed a robust disciplinary process.  (*Id.* at 11-14.)  Second, Betlewicz's procedural due process claim fails, argue defendants, because he did not have a property right in the denied benefits.  (*Id.* at 14-17.)  Specifically, defendants claim that, because Betlewicz's absence from work was necessitated by his failed drug test, as opposed to an on-the-job injury, he does not meet the prerequisites for leave due to injury in the performance of duty benefits under Administrative Manual § 5.12.  (*Id.* at 14-15.)  Moreover, 9 N.Y.C.R.R. § 479.13 prohibits a member of the State Police found guilty of disciplinary charges to collect back pay even if restored to his position, and, even if Betlewicz had a

property interest in leave pay, he was afforded adequate process during the disciplinary proceedings.  (*Id.* at 16-17.)  Finally, Melville and D'Amico argue that they are entitled to qualified immunity on the due process claim because it was "objectively unreasonable for [them] to have believed that, after terminating [Betlewicz] for cause, that they should have awarded him leave pay for the time he spent suspended without pay."  (*Id.* at 17-18.)

Betlewicz counters that defendants have failed to raise a sufficient defense to his Equal Pay Act claim because they abandoned their position that drug use justified withholding back pay by officially changing his status to "Disability Retirement," which results in any argument about his drug use as being "effectively . . . discredited and dropped from the case entirely." (Dkt. No. 50 at 9.)  Turning to his due process claim, Betlewicz argues that defendants improperly focus on the process afforded to him regarding his termination, and, again, that he had a property interest in the leave pay that was denied.  (*Id.* at 10-11.)  As for qualified immunity, Betlewicz contends that Melville and D'Amico are not entitled to the defense because they were not performing a discretionary function, and the right to payment of compensation is clearly established, both of which demonstrate that "[i]t was not objectively reasonable for [them] to deprive [him] of compensation

he had earned without affording him an opportunity to be heard." (*Id.* at 12-13.) In reply, defendants aptly note that Betlewicz has offered nothing to refute the affidavits of State Police employees Kevin Bruen and Neely Jennings, which show, among other things, that his official payroll status "remains listed as 'terminated,' with a comment code of 'disciplinary removal.'" (Dkt. No. 52 at 4-5; Dkt. No. 47, Attach. 4 ¶ 12; Dkt. No. 51, Attach. 1.)

Each of these arguments is considered below. As explained there, the court agrees with Betlewicz that its consideration of the pending summary judgment motions is not premature; however, it agrees with defendants that they are entitled to summary judgment on the remaining claims.[5]

## A.    The Pending Motions Are Not Premature

_____

[5] Additionally, the court notes that the parties have failed to clearly delineate the time periods for which Betlewicz is claiming leave pay under § 5.12 of the Administrative Manual. The court's best guess is that Betlewicz seeks leave pay from January 14, 2010, the date his suspension without pay commenced, to August 9, 2011, when he was awarded an accidental disability retirement pension, with the exception of those dates in February 2010 when his suspension was with pay. (Pl.'s SMF ¶¶ 5, 16; Dkt. No. 51, Attach. 1 ¶¶ 16, 19.) For reasons explained below, this ambiguity is of no moment.

Federal Rule of Civil Procedure 56(d) provides a mechanism for the court to defer consideration of a summary judgment motion, provide time for discovery, or "issue any other appropriate order" when the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Here, defendants claim that Betlewicz's motion is premature, and they seek time for discovery; specifically, they express their desire to depose Betlewicz.  (Dkt. No. 47, Attach. 2 at 7-10.)  While defendants, on the one hand, articulate how discovery will yield material facts and that those facts are reasonably expected to create genuine issues of fact, (*id.*), on the other, they contend that the parties disagree only on the "legal conclusions drawn from [undisputed] historical events in this case," (*id.* at 10-11).  Indeed, setting aside the disputed facts, defendants argue that "the balance of facts[,] which are not in dispute, entitle defendants [to] summary judgment," (*id.* at 10)—with this assertion, the court agrees.  Accordingly, because there are no material facts in dispute, defendants' arguments in support of denial or postponement of Betlewicz's motion are rejected.

**B.    Equal Pay Act**

Moving on to the merits of the claims, this court has previously

13

explained, (Dkt. No. 37 at 12), that the Equal Pay Act "prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for 'equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999) (quoting 29 U.S.C. § 206(d)(1)).  For purposes of the Equal Pay Act, the term "wages" encompasses "[f]ringe benefits, such as medical, hospital, accident, life insurance, and retirement benefits, bonus plans and leave." *Equal Emp't Opportunity Comm'n v. Bell Atl. Corp.*, Nos. 97 Civ. 6723(DC), 98 Civ. 3427(DC), 1999 WL 386725, at *7 (S.D.N.Y. June 11, 1999) (citing 29 C.F.R. § 1620.11).

Once a plaintiff makes a prima facie showing—as was found by the court based upon the pleadings alone, (Dkt. No. 37 at 14)—"the burden of persuasion shifts to the defendant to show that the wage disparity is justified by one of [four] affirmative defenses provided under the Act," *Belfi*, 191 F.3d at 136.  Here, the only defense available to defendants is "a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).  "[T]o successfully establish the 'factor other than sex'

14

defense, an employer must also demonstrate that it had a legitimate business reason for implementing the gender-neutral factor that brought about the wage differential."  *Belfi*, 191 F.3d at 136.

If the employer offers such proof, "the plaintiff may counter the employer's affirmative defense by producing evidence that the reasons the defendant seeks to advance are actually a pretext for sex discrimination." *Id*.  "The appropriate inquiry to determine if the factor put forward is a pretext, is whether the employer has use[d] the factor reasonably in light of the employer's stated purpose as well as its other practices."  *Id.* (internal quotation marks and citation omitted).

Here, defendants have adequately established the "factor other than sex" defense, and Betlewicz has failed to demonstrate that the reason offered by defendants is pretext for sex-based discrimination.  This conclusion is tangled up with Betlewicz's argument that defendants are precluded from arguing that his drug use justified a difference in pay.  (Dkt. No. 44, Attach. 2 at 7-9; Dkt. No. 50 at 8, 9.)  Betlewicz relies on a flawed premise: that, by changing his status to "Disability Retirement," defendants have admitted his entitlement to leave due to injury in the performance of duty benefits under § 5.12, and that they cannot now change course on

their concession.  (Dkt. No. 44, Attach. 2 at 7.)  The uncontroverted

affidavit of Jennings shows just the opposite; *i.e.*, Betlewicz's official payroll

status remains terminated for disciplinary removal.  (Dkt. No. 47, Attach. 4

¶¶ 12-13.)  Moreover, what Betlewicz claims was a change "is merely a

ministerial record-keeping function to document the Comptroller's action."

(*Id.* ¶ 14.)  Betlewicz entirely ignores the Jennings affidavit, instead he

holds fast to his assertion that "[d]efendants themselves effectively have

abandoned their position that [Betlewicz] used illegal drugs, because they

have officially changed his status from 'Dismissed' to 'Disability

Retirement.'" (Dkt. No. 50 at 9.)  Betlewicz's argument is plainly without

merit.

Betlewicz's other arguments attacking defendants' "factor other than

sex" defense are equally unavailing.  (Dkt. No. 44, Attach. 2 at 8-9.)[6]  First,

Betlewicz claims, without further explanation, that the proffered defense is

ineffective because "during the six months preceding his ultimate

_____

[6] Considering the invalidity of Betlewicz's assertion that defendants
"regard him now as on 'Disability Retirement,' [and] not as having been
'Dismissed,'" the court need not further address Betlewicz's first argument
that his claim for § 5.12 leave pay "is underscored by the fact that he
prevailed" before the WCB "proceeding arising out of his injury" and the
aforementioned change in position by defendants.  (Dkt. No. 44, Attach. 2
at 8.)

16

termination from employment, [he] had not been adjudicated as having used drugs." (Dkt. No. 44, Attach. 2 at 8-9.) While this assertion is factually correct, (Pl.'s SMF ¶¶ 5, 8), it ignores regulations that permitted Betlewicz's suspension without pay after disciplinary charges were filed against him, *see* 9 N.Y.C.R.R. § 479.10(a). Moreover, the urine and hair samples were collected prior to the date that Betlewicz claimed he was injured on the job, (Defs.' SMF ¶¶ 7, 8), which demonstrates that his drug use predated his injury. In addition, the applicable regulations also hold that an accused member of the State Police found guilty of disciplinary charges "shall not be entitled to back-pay for the period he was suspended, notwithstanding the fact that he has been restored to his position." 9 N.Y.C.R.R. § 479.13. While these regulations do not facially account for a member who has sustained an on-the-job injury such that he is entitled to § 5.12 benefits, they establish that defendants had a legitimate business reason for the alleged wage differential.

Second, Betlewicz's argument that his "alleged drug use is completely unrelated to the merits of [his] claim for, and right to receive, the pay that is due him because of his serious injuries and resulting inability to work for an extended period of time," (Dkt. No. 44, Attach. 2 at

17

9), does not demonstrate that defendants' "factor other than sex" defense is flawed. The basis of Betlewicz's contention is that denial of § 5.12 benefits because of an unrelated, minor, alleged drug infraction cannot be grounded in a legitimate business reason. (*Id.*) That position is unjustified. Indeed, it is perfectly reasonable for defendants to withhold leave pay for an employee who tested positive for marijuana use that predated an injury which would otherwise give rise to leave pay.

Satisfied that defendants have established a "factor other than sex" defense, the burden shifts back to Betlewicz to show that the denial of leave pay for his drug use is merely pretext for sex-based discrimination. *See Belfi*, 191 F.3d at 136. While Betlewicz contends that he can demonstrate pretext, his arguments are baseless attacks on the defense, (Dkt. No. 44, Attach. 2 at 9-12), that the court has already found sufficient. For example, Betlewicz claims that defendants' "proffered reason for the difference in pay simply is not credible" and that they "cannot even *articulate*, much less support with evidence, a viable factor 'other than sex' for their disparate treatment of [him]." (*Id.* at 10-11) Putting these inapposite arguments aside, there is no doubt that defendants reasonably applied the factor other than sex at play here: a violation of State Police

18

drug use policies to justify the denial of § 5.12 benefits.  It is also worth

noting that Betlewicz has not even attempted to refute Bruen's affidavit

establishing that he knew "of no other current or former member [of the

State Police], male or female, that has been awarded leave pay pursuant

to Section 5.12, after having been suspended and terminated for failing a

required drug test."  (Dkt. No. 51, Attach., 1 ¶ 32.)  This assertion further

supports the notion that Betlewicz cannot show that the denial of leave pay

had anything whatsoever to do with his sex.

For all of these reasons, defendants are entitled to summary

judgment on Betlewicz's Equal Pay Act claim.

## B.     Procedural Due Process

Fundamentally, procedural due process requires notice and an

opportunity to be heard.  *See Mullane v. Cent. Hanover Bank & Trust Co.*,

339 U.S. 306, 314 (1950).  The success of a procedural due process claim

relies upon the plaintiff: (1) identifying a property right; (2) showing a

deprivation of that right by the state; and (3) "show[ing] that the deprivation

was effected without due process."  *Local 342, Long Island Pub. Serv.*

*Emps., UMD, ILA, AFL-CIO v. Town Bd. of the Town of Huntington*, 31

F.3d 1191, 1194 (2d Cir. 1994) (internal quotation marks and citation

omitted).  Property interests are not created by the Constitution, but instead "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law[—]rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  And, as for the process itself, there is no violation unless the state either provides no process whatsoever or provides a constitutionally inadequate one.  *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

Here, Betlewicz argues that he holds a valid property interest in leave pay under § 5.12, it has been denied to him, and that the denial was effected without any procedural safeguards.  (Dkt. No. 44, Attach. 2 at 13-17.)  The court agrees with Betlewicz that he had a property right in benefits under § 5.12 for leave due to injury in the performance of duty.  Indeed, the WCB's determination, which went unchallenged by the State Police, established that Betlewicz was "injured in a genuine line-of-duty accident" despite arguments by the State Police that Betlewicz fabricated his accident out of fear that he would fail the impending drug test.  (Pl.'s SMF ¶¶ 10, 12-13.)  Defendants concede this point.  (Dkt. No. 47, Attach.

2 at 15.)

Defendants argue, however, that Betlewicz does not meet the requirements of § 5.12, and that his right to leave pay did not accrue, because his absence from duty was "necessitated by his suspension (and subsequent termination) after a positive drug test," and not by his injury as required under § 5.12. (*Id.*) This argument does not suggest that Betlewicz had no property interest in the benefits available under § 5.12, or, to put it differently, that his right to them did not accrue before his suspension without pay on January 14, but, instead, it supports the notion that the disciplinary process that led to Betlewicz's termination provided him with all the process that he was due before the benefits were denied.

Admittedly, Administrative Manual § 5.12 and regulations codified in the Compilation of Codes, Rules and Regulations of the State of New York governing the State Police appear to be in tension with one another. The Administrative Manual is a nonpublic document of internal State Police regulations that contains "compilations of investigative techniques" and other procedures, *Fink v. Lefkowitz*, 47 N.Y.2d 567, 573 (1979), which include, as relevant here, matters of discipline and leave, (Dkt. No. 47, Attach. 3 at 7-18, 145-47). Section 5.12 of the Administrative Manual,

titled "Leave Due To Injury Or Disease Incurred In The Performance Of Duty," provides that:

> a Member [of the State Police] who is necessarily absent from duty because of an occupational injury . . . upon giving notice to the Superintendent that the absence is because of such injury . . . and that the Member claims benefits under this Law, may, pending adjudication of the case and while the disability renders the Member unable to perform the duties of his/her position be granted leave with full-pay for a period not to exceed [six] months.

(Dkt. No. 47, Attach. 3 at 145.) Elsewhere, it is clear that leave with full pay is available beyond six months, and, in some cases, if the member suffers a permanent injury it can be "continued . . . but not beyond the effective date of retirement of the Member." (*Id.* at 146.) On the other hand, the regulations provide that, under certain circumstances, a member may be suspended without pay pending a disciplinary hearing, *see* 9 N.Y.C.R.R. § 479.10(a), and that a member found guilty of disciplinary charges "shall not be entitled to back-pay for the period he was suspended, notwithstanding the fact that he has been restored to his position," *id.* § 479.13. In this court's view, the disciplinary suspension and subsequent discipline of a member, following a guilty finding as to any disciplinary charges, forecloses the member's receipt of benefits under

§ 5.12 provided that the member is afforded adequate process in the disciplinary hearing.  To hold otherwise would permit those members who have violated the Administrative Manual drug use policy, or committed more egregious offenses under State Police rules and regulations, to nonetheless be enriched under § 5.12 despite their misdeeds.

Assuming that Betlewicz met all the requirements for leave pay at the time of his suspension, his marijuana-positive drug test was not without consequences.  Betlewicz was on notice that the disciplinary charges, if sustained, could result in a host of disciplinary action including his termination, (Dkt. No. 47, Attach. 3 at 20-24), and that he was not entitled to any back pay if he was found guilty of any of the charges, *see* 9 N.Y.C.R.R. § 479.13.  Moreover, Betlewicz, represented by counsel, fully participated in the disciplinary hearing that led to his termination.  (Defs.' SMF ¶¶ 23-24.)  Therefore, even though Betlewicz has demonstrated that he had a property interest in leave pay under § 5.12 and that it was denied him, he received a constitutionally adequate process.[7]

## V.  <u>Conclusion</u>

---

[7] In light of the foregoing, the court need not address defendants' argument that Melville and D'Amico are entitled to qualified immunity. (Dkt. No. 47, Attach. 2 at 17-18.)

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Betlewicz's summary judgment motion (Dkt. No. 44) is **DENIED**; and it is further

**ORDERED** that defendants' cross motion for summary judgment (Dkt. No. 47) is **GRANTED** and Betlewicz's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 5, 2014
Albany, New York

Gary L. Sharpe
Gary L. Sharpe
Chief Judge
U.S. District Court

24